UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHAD DENNIS HOLLETT

    Plaintiff,

vs.                                      Case No.: 3:22-cv-62-TJC-PBD

MIKE WILLIAMS, in his official capacity
As Sheriff of the Consolidated City of
Jacksonville, Florida; OFFICER M.A.
MOREL-SEPULVEDA, individually;
OFFICER T.D. Yorton, individually;
OFFICER M. BOREE, individually;
SERGEANT G. DANIELS, individually,

    Defendants.

_____

## **FIRST AMENDED COMPLAINT**

    Plaintiff, CHAD DENNIS HOLLETT, through his undersigned attorney, hereby brings this action seeking monetary damages, attorney's fees and costs against Defendants, and alleges the following:

    1.    This is an action for damages, attorney's fees and costs for the deprivation of Plaintiff's rights secured by the First, Fourth and Fourteenth Amendment to the United States Constitution as well as claims under Florida Law.

## JURISDICTION AND VENUE

2.     Plaintiff invokes jurisdiction of this court pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §§1331 and 1343, as to the federal claims herein. The court has supplemental jurisdiction as to the state law claims pursuant to 28 U.S.C. §1367.

3.     Venue in this district is proper pursuant to 28 U.S.C. §1391, in that the cause of action arose in this district.

## PARTIES

4.     Plaintiff CHAD DENNIS HOLLETT, (hereinafter referred to as "HOLLETT") is a resident of Duval County, Florida.

5.     Defendant OFFICER M.A. MOREL-SEPULVEDA, (hereinafter referred to as "MOREL-SEPULVEDA"), was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office ("JSO"). At all times relevant to this cause, MOREL-SEPULVEDA acted in conformity with the customs, practices and/or policies of the Jacksonville Sheriff's Office and acted under the color of state law.

6.     Defendant OFFICER T.D. YORTON, (hereinafter referred to as "YORTON"), was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office ("JSO"). At all times relevant to this cause, YORTON acted in

conformity with the customs, practices and/or policies of the Jacksonville Sheriff's Office and acted under the color of state law.

7. Defendant OFFICER M. BOREE, (hereinafter referred to as "BOREE"), was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office ("JSO"). At all times relevant to this cause, BOREE acted in conformity with the customs, practices and/or policies of the Jacksonville Sheriff's Office and acted under the color of state law.

8. Defendant SERGEANT G. DANIELS, (hereinafter referred to as "DANIELS"), was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office ("JSO"). At all times relevant to this cause, DANIELS acted in conformity with the customs, practices and/or policies of the Jacksonville Sheriff's Office and acted under the color of state law.

9. Defendant, MIKE WILLIAMS, (hereinafter referred to as "WILLIAMS"), in his official capacity as Sheriff of the City of Jacksonville, Florida, was at all times relevant, responsible for the supervision, training, instruction, discipline, control, and conduct of police officers of the Jacksonville Sheriff's Office and made policy for the Jacksonville Sheriff's Office with respect to seizures, searches, arrests and use of force. At all times relevant, WILLIAMS had the power, right and duty to train and control his officers, agents and employees to conform to the Constitution of the Unites States and to ensure that all

orders, rules, instructions and regulations promulgated for the Jacksonville Sheriff's Office were consistent with the Constitution of the United States. At all times relevant, WILLIAMS' agents and employees acted under color of state of law.

## FACTUAL ALLEGATIONS

10. On May 31, 2020 HOLLETT was attending a peaceful protest at the Duval County Courthouse following the death of George Floyd.

11. At the protest JSO allegedly made the following announcement to the attendees who were assembled at the Duval County Courthouse:

> "The Jacksonville Sheriff's Office (JSO) respects and acknowledges the rights of persons to express their views in a lawful manner. JSO's role is to protect the rights of the public and peaceful protestors by enforcing the law and maintaining order. During a lawful protest, JSO will, however, take appropriate action in response to anyone who breaches the peace, engages in disorderly conduct, incites a riot by words or actions, or when other criminal violations are observed or reported. Please be reminded that anyone who engages in unlawful behavior that obstructs or interferes with a lawful and peaceful protest may also be subject to arrest or citation. If you have any questions regarding what is or is not prohibited activity, please ask to speak to an on-scene police supervisor. Thank you for your assistance and cooperation in maintaining order and civility today."

12. The crowd of protestors that day was not overly large or uncontrollable. The protestors were not obstructing any public access or blocking traffic.

13. JSO Officers in riot gear arrived at the protest to disperse the protesters from the area.

14. HOLLETT with other protesters walked away from where the JSO officers in riot gear were dispersing the crowd. HOLLETT was continuing to peacefully demonstrate as he walked away from the immediate area of the Duval County Courthouse.

15. HOLLETT was then grabbed around the neck by JSO officer YORTON. Another JSO officer ran up and punched in the face. HOLLETT was then taken to the ground and the two officers continued to hit HOLLETT while he was down then another JSO officer appeared and hit HOLLETT as well.

16. HOLLETT was then handcuffed and taken to a staging area where he was arrested by Officer MOREL-SEPULVEDA and transported to the Duval County Jail where he was incarcerated for charges of Resisting Officer Without Violence and Unlawful Assembly.

17. In court at first appearance the next day, bail was set and later posted and HOLLETT was released from jail. However, prosecution of HOLLETT had commenced.

18. Then on June 3, 2020, the State Attorney's Office dismissed all charges against HOLLETT.

19. MOREL-SEPULVEDA, YORTON, BOREE and DANIELS caused a prosecution to be instituted against HOLLETT in the County Court, in and for Duval County, Florida, Case #16-2020-MM-008526-AXXX.

20. MOREL-SEPULVEDA, YORTON, BOREE and DANIELS acted with malice in instituting the aforesaid prosecution which is implied by the lack of probable cause and/or with express malice as shown by their reckless disregard for the rights of HOLLETT.

21. No prosecution of HOLLETT would have occurred but for the actions of MOREL-SEPULVEDA, YORTON, BOREE and DANIELS.

22. The criminal proceeding was resolved in favor of HOLLETT by a dismissal of all charges before trial by the Court, (see *State of Florida v. Chad Dennis Hollett,* Case # 16-2020-MM-008526-AXXX-MA, docket entries #20, #21 and #22).

23. The fact of HOLLETT's prosecution became known to many persons unknown to HOLLETT as a result of being made part of the public records of Duval County, Florida and appearing on court documents available to public scrutiny.

24. As a result of the actions of MOREL-SEPULVEDA, YORTON, BOREE and DANIELS, HOLLETT suffered physical injuries, pain and suffering, emotional anguish and distress, embarrassment, and damage to his reputation, all

of which continue to this day and are likely to continue in the future. HOLLETT also suffered monetary damages as a result of the arrest and prosecution instituted by MOREL-SEPULVEDA, YORTON, BOREE and DANIELS.

25. The officers unjustified use of force against HOLLETT was not isolated, but was part of a longstanding trend of similar instances of force and other forms of misconduct by JSO officers.

26. In December 2004, a member of JSO slammed Sammy Lee Evans to the ground. As a result, Mr. Evans's head hit the ground with such force that it resulted in Mr. Evans' death. Mr. Evans was not resisting the arrest, which was for an open container of alcohol.

27. In January 2006, members of JSO broke the right jaw of Bryan Barnes when effectuating his arrest. The JSO members struck Barnes despite the fact that Barnes complied with all of their commands and did not resist the officers while being arrested. *See Barnes v. Sheriff Rutherford, et. al.,* Case No.:3:08-cv-217-J-33JRK (M.D. Fla. Jacksonville Division). There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until prompted by the City of Jacksonville Office of General Counsel sending of a complaint to JSO in January 12, 2011. This complaint and the accompanying investigation occurred four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit

was settled. The JSO Internal Affairs Unit concluded as follows relating to Mr. Barnes' incident: "that charge of EXCESSIVE FORCE against Police Lieutenant R. W. Beltz #7862 and Police Officer C. M. Weippert # 7829 be classified as NOT SUSTAINED.

28. In January 2006, a member of JSO kneed Ronal Ferrera in the face three times while Ferrera was handcuffed.

29. In October 2007, two members of JSO, along with a civilian "ride along," rammed the head of Colin Runge into a steel door in the intake area of the jail. At the time, Runge was fully secured and unable to resist the officers as he was in total appendage restraint, otherwise known as being "hog-tied." *See Runge v. Snow,* Case No.: 3:10-cv-900-HES-JRK (M.D. Fla. Jacksonville Division).

30. In January 2008, a member of JSO slammed Larue Perkins onto the pavement of a parking lot, breaking his jaw. At the time, Perkins was complying with the officer's directive to leave the parking area. Perkins was then falsely arrested after having his jaw broken. *See Perkins v. Tolen, et al.,* Case No.: 3:10-cv-851-RBD-TEM (M.D. Fla. Jacksonville Division). Perkins filed a written internal affairs complaint with JSO shortly after the January 2008 incident. On January 21, 2011, almost three years after the incident, the JSO Internal Affairs Unit received an "in-house complaint" from the City of Jacksonville's Office of General Counsel regarding the January 2008 incident involving Perkins. The

subject matter of the complaint was the JSO officer's excessive use of force against Perkins. The in-house complaint was then investigated by the JSO Internal Affairs Unit, which concluded that "the charge of Excessive Force against Police Officer R. J. Tolen #5597 be classified as NOT SUSTAINED."

31. In September 2008, a member of JSO dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head, leaving Mr. Lunsford paralyzed. The officer did so despite Lunsford's prior warning to the officer that Lunsford had four screws and a plate in his neck. *See Lunsford v. Rutherford, et. al.,* Case No.:3:09-cv-01015-MMHMCR (M.D. Fla. Jacksonville Division). Upon information and belief, the incident was referred to JSO Internal Affairs and no disciplinary action was taken against the officer involved.

32. In May 2010, a member of JSO fractured multiple bones in David Kemp's face by violently striking him as he laid on the ground in compliance with the officer's commands to do so. *See Kemp v. Rutherford et. al.,* Case No.: 3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division). Sheriff Rutherford had actual notice of Mr. Kemp's encounter with JSO because of the federal lawsuit filed against him, yet Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and officer involved and failed to discipline the officer involved.

33. In March 2012, members of JSO questioned Kyle Fowler concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members due to the behavior of the officers and told them he was not interested in speaking anymore, and began to walk towards his gate. As he did so, the JSO members knocked Mr. Fowler through a closed metal gate and onto the ground. The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him, injuring Mr. Fowler in the process of effectuating his false arrest. The charge on which Mr. Fowler was falsely arrested, resisting an officer without violence, was ultimately dismissed. The JSO members involved were not disciplined or reprimanded for their actions against Mr. Fowler.

34. In June 2013, a member of JSO violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident. As Mr. Slade was merely asking the officer when his insurance information would be taken following the accident, he was forcefully thrown to the ground. Mr. Slade was falsely arrested for resisting an officer without violence in violation of §843.02, Fla. Stat. (2012). The charges against Mr. Slade were dismissed. The JSO member involved was not disciplined or reprimanded for his actions against Mr. Slade.

35. On November 12, 2014, at the Pretrial Detention Facility, a member of JSO violently slammed Deandre Ezell's head into a concrete wall, while Mr. Ezell was handcuffed. The use of force knocked Mr. Ezell unconscious and resulted in Mr. Ezell's hospitalization. At the time of the incident, Mr. Ezell was a minor.

36. In July 2015, members of JSO punched Kelli Wilson in the face after she refused their unlawful commands to hand over her cell phone she was using to record public police activity. JSO officers proceeded to violently take Wilson to the ground, pulling her hair and attempting to rip her arms out from under her. Ms. Wilson was arrested for resisting an officer without violence. The charges against Ms. Wilson were dismissed. JSO members were not disciplined or reprimanded for their actions against Ms. Wilson.

37. On April 13-14, 2016, a JSO officer violently body slammed John Blessing who was attending a concert at Veterans Memorial Arena causing bodily injury. Blessing was arrested by that JSO officer's fiancé (also a JSO officer) for resisting without violence, disorderly intoxication, and battery. All were dismissed by the trial court.

38. On April 27, 2016, Mayra Martinez was at her place of employment, Scores, when JSO officers arrived after calls about her intoxication. JSO officers slammed Ms. Martinez into the pavement and punched her numerous times. Upon

arrival at the Pretrial Detention Facility, JSO officers hit Martinez with a closed fist in her stomach, chest, and face, knocking her unconscious. Martinez remained handcuffed during the encounter.

39. On April 4, 2017, Connell Crooms was participating in a peaceful protest at Hemming Park Plaza in Jacksonville Florida, when a counter-protestor reached his arm over the

shoulder of a member of JSO and stuck his middle finger in Mr. Crooms' face. Rather than apprehend the aggressor, members of JSO threw Connell Crooms to the ground, struck him repeatedly in the back and face, and fired a Taser into his back, all of which caused Mr. Crooms to lose consciousness and require hospitalization. Mr. Crooms is deaf and did not resist or disobey any of the officers' commands.

40. On April 26, 2017, Daniel Nyman was seeking treatment at UF Health Jacksonville when the same JSO officer who body slammed Blessing spat at Mr. Nyman, charged at Mr. Nyman, threw him to the ground, shoved Mr. Nyman's jaw into the ground with his knee, and then flipped Mr. Nyman over and kneed him in the back. Mr. Nyman required repair of his previously treated broken jaw and spent five days in the hospital as a result of the attack.

41.   In June 2017, members of JSO struck Elias Campos, a seventeen-year-old minor, multiple times in the face while the minor was handcuffed inside a patrol car. The minor child required medical attention at the scene.

42.   On June 23, 2017, Jonathan Williams was pulled over by JSO officers, who placed one handcuff on Mr. Williams before punching him twice in the face despite the fact he was not resisting. The JSO officer proceeded to throw Mr. Williams to the ground, punching him in the back and kneeing him in the head. As a result, Mr. Williams suffered fractures in the right orbital wall, left inferior, and medial orbital wall of his skull, as well as soft tissue swelling and hematoma in the back of his head. The officers involved in the use of force were not reprimanded or disciplined.

<u>**COUNT I**</u>
<u>**42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION**</u>
**(Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS)**

43.   Paragraphs 1 through 42 above are realleged and incorporated by reference herein.

44.   Plaintiff engaged in constitutionally protected speech by participating in the protest of unconstitutional law enforcement actions against certain people in Jacksonville, Florida and other places in the United States, as exemplified by the brutal murder of George Floyd by a police officer.

45. Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS retaliated against Plaintiff by unlawfully arresting him and battering him.

46. Plaintiff's arrest and injuries while protesting were directly caused by Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS.

47. As a direct and proximate result of retaliation by Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS, Plaintiff suffered damages, including, but not limited to, physical injury, pain and suffering, loss of liberty, injury to reputation, humiliation, monetary loss of earnings, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, HOLLETT, demands judgment against Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS for:

(a) actual and compensatory damages;

(b) punitive damages;

(c) an award of attorney's fees and costs; and

(d) any other relief this Court deems just and proper.

## COUNT II
## UNREASONABLE SEARCH AND SEIZURE: EXCESSIVE FORCE
### (Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS)

48. Paragraphs 1 through 42 are realleged and incorporated by reference herein.

49. MOREL-SEPULVEDA YORTON, BOREE and DANIELS' actions by arresting and seizing HOLLETT violently constituted an unreasonable seizure under the Fourth and Fourteenth Amendment of the United States Constitution.

50. The acts and omissions above were undertaken by MOREL-SEPULVEDA, YORTON, BOREE and DANIELS in their willful, wanton, callous and knowing disregard of the clearly established rights of HOLLETT under the law to be free from unreasonable searches and seizures.

51. As a direct and proximate result of the seizure, HOLLETT suffered damages, including, but not limited to, severe pain and suffering, physical injuries, monetary loss of earning, and severe emotional and psychological distress.

WHEREFORE, HOLLETT demands judgment against MOREL-SEPULVEDA, YORTON, BOREE and DANIELS individually for:

(a) actual and compensatory damages;

(b) punitive damages;

(c) an award of attorney's fees and costs; and

(d) any other relief this Court deems just and proper.

## COUNT III
## 42 U.S.C. §1983
## UNREASONABLE SEARCH AND SEIZURE: FALSE ARREST
**(Defendants MOREL-SEPULVEDA, YORTON, BOREE and DANIELS)**

52. Paragraphs 1 through 42 are realleged and incorporated by reference herein.

53. MOREL-SEPULVEDA, YORTON, BOREE and DANIELS seized and arrested HOLLETT without a warrant or probable cause that HOLLETT had committed a law violation.

54. The actions of MOREL-SEPULVEDA YORTON, BOREE and DANIELS in seizing HOLLETT constituted an unreasonable search and seizure of HOLLETT under the Fourth and Fourteenth Amendment of the United States Constitution.

55. The acts and inactions of MOREL-SEPULVEDA, YORTON, BOREE and DANIELS constituted a willful, wanton, callous and knowing disregard of the clearly established rights of HOLLETT under the law to be free from unreasonable searches and seizures.

56. As a direct and proximate result of MOREL-SEPULVEDA, YORTON, BOREE and DANIELS in effecting the aforesaid unlawful search and seizure, HOLLETT has suffered damages, including, but not limited to, the cost of bonding out of jail and defending the associated criminal action, loss of liberty, injury to reputation, humiliation, severe pain and suffering, physical injuries, monetary loss of earning, and severe emotional and psychological distress.

WHEREFORE, HOLLETT demands judgment against MOREL-SEPULVEDA, YORTON, BOREE and DANIELS individually for:

(a) actual and compensatory damages;

(b) punitive damages;

(c) an award of attorney's fees and costs; and

(d) any other relief this Court deems just and proper.

## COUNT IV
## MUNICIPAL LIABILITY
### (Defendant WILLIAMS)

57. Paragraphs 1 through 42 are realleged and incorporated by reference herein.

58. WILLIAMS in his official capacity as Sheriff of the City of Jacksonville, Florida, his agents and employees, acting within their authority and under color of law, instituted and followed practices, customs and policies which directly resulted in the First Amendment Retaliation, the use of excessive force against HOLLETT, as well as his false arrest, which were the moving force causing his injuries and is actionable under 42 U.S.C. §1983 as a violation of the Fourth and Fourteenth Amendments to the Unites States Constitution.  The Sheriff's Office policy that resulted in the First Amendment Retaliation and the custom and practice of using excessive force and falsely arresting citizens, and by failing to discipline its officers for such constitutional violations, for the use of excessive force, including the officers who used excessive force against HOLLETT, as well as his false arrest, WILLIAMS has ratified his officers' decisions and reasons for those decisions, thus constituting a practice, custom or

policy. Alternatively, the officers acting on the scene were the final policy makers for the Sheriff's Office, as their decisions were not immediately or effectively reviewable.

59.   As a direct and proximate result of the willful and deliberate action or inaction of the Jacksonville Sheriff's Office, Plaintiff has suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, HOLLETT demands judgment against WILLIAMS in his official capacity as Sheriff for the City of Jacksonville, for:

(a)   actual and compensatory damages;

(b)   an award of attorney's fees and costs; and

(c)   any other relief this Court deems just and proper.

## COUNT V
## STATE LAW CLAIM:  BATTERY
### (Defendant WILLIAMS)

60.   Paragraphs 1 through 42 are realleged and incorporated by reference herein.

61.   HOLLETT has satisfied all conditions precedent to bringing this action as required pursuant to §786.28, Fla. Stat. (2014) and §§112.201-112.205, Jacksonville Ordinance Code.

62. Officers of the Jacksonville Sheriff's Office, actually and intentionally battered HOLLETT against his will, without legal justification.

63. WILLIAMS, having given the officers the authority to use force against HOLLETT, is liable for use of such authority.

64. HOLLETT, as a result, suffered severe pain and suffering, physical injuries, mental anguish and emotional distress.

WHEREFORE, BLESSING demands judgment against WILLIAMS in his official capacity as Sheriff for the City of Jacksonville, for:

(a) actual and compensatory damages;

(b) costs; and

(c) any other relief this Court deems just and proper.

### COUNT VI
### STATE LAW CLAIM:  FALSE IMPRISONMENT
**(Defendant WILLIAMS)**

65. Paragraphs 1 through 42 are realleged and incorporated by reference herein.

66. HOLLETT has satisfied all conditions precedent to bringing this action as required pursuant to §786.28, Fla. Stat. (2012).

67. Officers with the Jacksonville Sheriff's Office unlawfully restrained HOLLETT against his will under circumstances where such detention was unreasonable and unwarranted.

68. As a result of the false arrest, HOLLETT suffered loss of liberty, monetary loss of earnings, injury to reputation, humiliation and severe emotional and psychological distress.

WHEREFORE, HOLLETT demands judgment against WILLIAMS in his official capacity as Sheriff for the City of Jacksonville, for:

(a) actual and compensatory damages;

(b) costs; and

(c) any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff HOLLETT hereby demands a jury trial of all issues so triable.

**MITCHELL A. STONE, P.A.**

/s/ Mitchell A. Stone
**MITCHELL A. STONE, ESQUIRE**
Florida Bar No.: 797121
1830 Atlantic Boulevard
Jacksonville, Florida 32207
904-396-3335
Attorney for Plaintiff
Email: mitch@jacksonvilledefense.com